| | AUSA: Sara D. Woodward | Telephone: 313-226-9180 |
|---|---|---|
| AO 91 (Rev. 08/09) Criminal Complaint | Special Agent : Kenneth Adams | Telephone: 734-995-0387 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America,

      Plaintiff,

v.

KAI XU

Case:2:14-mj-30493
Judge: Unassigned,
Filed: 09-23-2014 At 09:36 AM
USA v. SEALED MATTER(CMP)

      Defendant(s).

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about the date(s) of <u>August 5, 2014</u>, in the county of <u>Wayne</u> in the <u>Eastern</u> District of <u>Michigan</u>, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 554 | Smuggling goods from the United States |
| 16 U.S.C. Section 1638(c)(1) | Trading in specimens contrary to CITES |
| 16 U.S.C. Section 3372(a)(1) | exporting any fish or wildlife in violation of law |

This criminal complaint is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Kenneth Adams, U.S. Fish and Wildlife
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 23, 2014

_____
*Judge's signature*

City and state: Detroit, Michigan

Donald Scheer, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Special Agent Kenneth D. Adams, swear and affirm as follows:

## INTRODUCTION

1. I am a Special Agent (SA) with the United States Fish and Wildlife Service (USFWS), Division of Law Enforcement, under the United States Department of the Interior. I have been so employed for approximately thirteen (13) years and am currently assigned to investigate federal wildlife violations from the Ann Arbor, Michigan office of that agency. I am an investigative law enforcement officer of the United States, within the meaning of Title 16, United States Code, Section 3375, and a Federal Law Enforcement Officer within the meaning of Rule 41(a), Federal Rules of Criminal Procedure.

2. I am a graduate of the Federal Law Enforcement Training Center having completed the Criminal Investigators School and numerous other USFWS training programs. Prior to employment as a Special Agent with the USFWS, I was a Wildlife Inspector for the USFWS for five and one-half (5 1/2) years. I received a Bachelor of Science Degree in Wildlife Management from Ohio State University. I have participated in numerous investigations which involve unlawful taking, possessing, transporting, and commercialization of wildlife, as well as other illegal activities, including the smuggling of products derived from wildlife.

1

3. The statements contained in this Affidavit are based on my experience and background as a special agent and on information provided by other USFWS agents. I have not set forth every fact resulting from the investigation; rather, I have set forth only the information necessary to establish probable cause that KAI XU violated 18 U.S.C. § 554 (smuggling goods from the United States), 16 U.S.C. § 1638(c)(1) (trading in specimens contrary to the Convention on the International Trade in Endangered Species of Wild Fauna and Flora (CITES), and 16 U.S.C. § 3372(a)(1) (exporting any fish or wildlife in violation of law).

## PURPOSE OF AFFIDAVIT

4. 16 U.S.C. § 1538(c)(1) makes it unlawful for any person subject to the jurisdiction of the United States to engage in trade in any specimens contrary to the Convention on the International Trade in Endangered Species of Wild Fauna and Flora (CITES). 16 U.S.C. § 1538(d)(1)(A) makes it unlawful for any person to act as an importer or exporter of wildlife without being licensed through the Department of the Interior, specifically the USFWS.

5. In addition, 16 U.S.C § 3372(a)(1) makes it a crime to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plants taken, possessed, transported, or sold in violation of any law, treaty or regulation of the United States. 16 U.S.C. § 3372(d) makes it unlawful for any person to make or submit any false record, account, or label for, or any false identification of any

fish, wildlife or plant which has been or is intended to be (1) imported, exported, transported, sold, purchased, or received from any foreign country; or (2) transported in interstate of foreign commerce.

6. Pursuant to the provisions of 16 U.S.C § 1532(8) the term "fish and wildlife" means any member of the animal kingdom, including without limitation any mammal, fish, bird, amphibian, reptile, mollusk, crustacean, arthropod or other invertebrate, and includes any part, product, egg, or offspring thereof, or the dead body or parts thereof. A similar definition exists in 16 U.S.C. § 3371(a).

## DETAILS OF THE INVESTIGATION

7. On August 5, 2014, USFWS Special Agent Mona Iannelli received a call from Dave Last Name Unknown (LNU) from the UPS in Detroit, Michigan. Dave LNU reported there was a package at the United Parcel Service Customer Center (UPSCC) located at 19951 Hoover Street, Detroit, Michigan addressed to KAI XU that was being held for pick up. Dave LNU described the package as a larger brown box weighing seven pounds. The box said "live fish keep cool." There were no air holes on the box. The box was shipped from Semmes, Alabama, via UPS next day air.

8. On the same day, SA Iannelli received a telephone call from US Customs and Border Protection (US CBP) reporting that KAI XU had crossed the border

3

into the United States at the Detroit, Windsor Tunnel. KAI XU was driving a Ford Escape with Ontario License Plate BLDM198.

9. Also on August 5, 2014, I, along with two other USFWS agents (Resident Agent in Charge Paul Beiriger and SA James Fuller), began conducting surveillance at the UPSCC located at 19951 Hoover Street, Detroit, Michigan. In the afternoon, an individual, later identified as KAI XU, arrived at the UPSCC driving a tan colored Ford Escape with Ontario license plate BLDM198. XU exited the vehicle, looked around the parking lot, and then entered the UPSCC. A short time later, XU exited the building carrying a medium cardboard box with red lettering. XU again looked around the parking lot, and then walked back to the rear of the Escape, where he opened the tailgate and placed the brown cardboard box inside. XU then opened a white box with the word "PERISHIBLE" in red ink stamped on the box, and arrows indicating to keep the top of the box up. The box also appeared to have several small holes in it, along the top of the box. SA Fuller saw XU remove a square piece of thin Styrofoam and remove several round clear plastic containers from the box and set them in the cargo area of the Escape.

10. XU then opened a white cubed-shaped box, and removed additional clear plastic containers and set them in the cargo area. XU then retrieved plastic baggies from the Escape, and appeared to be placing the contents of the plastic containers into the baggies. XU then opened the brown box with red letters which read,

"LIVE FISH KEEP COOL." XU then removed several clear plastic square containers, and appeared to put the contents into additional baggies.

11. XU then retrieved a plastic grocery bag from the Escape and removed a new package of clear packaging tape. Using scissors, XU opened the tape, removed the plastic "self-cutter" on the roll of tape and discarded it and the wrapper on the ground under the Escape. XU then placed the roll of tape and several baggies into the grocery bag (XU was obscured part of the time by another vehicle that had parked between me and XU).

12. SA Fuller then observed XU start walking across the parking lot carrying the grocery bag and scissors. The grocery bag appeared weighted. XU continuously looked around the parking lot as he walked toward a row of UPS trucks. XU walked between two UPS semi-trailers where he remained out of sight for approximately ten (10) minutes.

13. SA Fuller observed XU walk out from between the two (2) UPS trailers towards his vehicle, again glancing around the parking lot. XU was carrying a scissors, but no plastic grocery bag.

14. XU returned to the back of his Escape and wiped his hands with paper towel which he discarded on the ground under the Escape. XU turned towards me as he looked around the parking lot. As he did so, SA Fuller noticed irregularly shaped bulges under XU's sweat pants on both his legs.

15. XU stacked the brown and white boxes together and placed them in the back passenger seat of the Escape. XU then got into the driver's seat and departed the UPSCC at approximately 5:30 p.m.

16. SA Fuller and myself followed XU in my vehicle and observed him cross Hoover Street from the UPSCC driveway, and park near a garbage dumpster in the parking lot of the Hoover Market at 19934 Hoover Street, Detroit, Michigan. SA Fuller then departed the UPSCC going north on Hoover, while other agents maintained eyesight of XU's vehicle as it departed the Hoover Market and eventually turned onto Lafayette Street in Detroit, Michigan. Agents observed XU turn onto the one-way street that leads to the Detroit/Windsor border tunnel crossing. Surveillance by USFWS Detroit was terminated at that time.

17. I received a telephone call from SA Iannelli who advised me that Canadian Border Services Administration (CBSA) stopped XU's vehicle in Canada and referred him for secondary inspection. During the secondary inspection, XU was found to have fifty-one (51) live turtles tapped to his person. Specifically, XU had forty-one (41) turtles tapped to his legs and ten (10) hidden between his legs. The turtles were a variety of different North American species, including Eastern box turtles, Red-eared sliders, and Diamondback Terrapins. The turtles were seized by CBSA and turned over to the custody of USFWS. The turtles are "fish and wildlife" as that term is defined in 16 U.S.C. § 1532(8).

18. At approximately 6:10 p.m., SA Fuller and myself returned to the Hoover Market. SA Fuller walked around the back of the brick dumpster containment area and found brown and white cardboard boxes that were addressed to XU, and were the same boxes SA Fuller saw XU unpacking in his vehicle. The boxes contained numerous clear plastic containers, some having moist paper towel in them, others having moss in them. Several of the containers in the brown cardboard box had the following written on their lids in black marker, "4 Gulf Coast T.C .Major."

19. At approximately 6:25 p.m., SA Adams, Resident Agent in Charge Paul Beiriger, and I returned to the UPSCC parking lot. SA Fuller walked between the two (2) semi-trailers where SA Fuller had observed XU go, and discovered the plastic grocery bag lying under one of the trailers. Retrieving it, SA Fuller found it to contain a partial roll of clear packaging tape.

## CONCLUSION

20. Based on my training and experience, there is probable cause to believe that KAI XU violated 18 U.S.C. § 554 (smuggling goods from the United States), 16 U.S.C. § 1638(c)(1) (trading in specimens contrary to the Convention on the International Trade in Endangered Species of Wild Fauna and Flora (CITES), and 16 U.S.C. § 3372(a)(1) (exporting any fish or wildlife in violation of law).

                                    Special Agent Kenneth Adams
                                    U.S. Fish and Wildlife Service

Sworn to before me and subscribed

In my presence, this 23rd day of September, 2014

DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE